UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>V.<br><br>EARL LEE PLANCK, JR.,<br><br>    Defendant. | CRIMINAL ACTION NO. 5:20-24-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Defendant Earl Lee Planck, Jr. ("Planck") was indicted on February 6, 2020 with Conspiracy to Defraud the United States (Counts 1, 3); Crop Insurance Fraud (Counts 4-12); Conspiracy to Commit Mail and Wire Fraud (Count 21); Conspiracy to Commit Money Laundering (Count 22); and Tax Evasion (Counts 23-25). (DE 1). Defendant Jesse Smith ("Smith") was charged in the same indictment on crop insurance fraud charges (Counts 18-20). (*Id.*)

As previously noted in the Court's January 6, 2021 Opinion and Order, (DE 70), and as fully outlined in the Governments' stipulations (DE 81 & 81-1), Planck initiated contact with Smith around mid-November 2020 after the two did not have contact for "about a year." (DE 61 at 2). This sudden contact alarmed Smith because, at that point, he had decided to cooperate with the Government in their case-in-chief against Planck. After consultation with professional responsibility advisors, the Government contrived a covert investigation predicated on Smith's involvement, as well as the appointment of a "filter attorney"—disassociated to this prosecution—and a new case agent.

> The plan was that Smith, under the supervision of a federal agent, would respond to Planck's overtures for a meeting or call. Because of the possibility that any conversation between Smith and Planck might reveal privileged

> attorney-client communications, … a filter attorney and a new agent, not related to the fraud case, … [were appointed]. Prior to any contact with Planck, the [filter attorney] met with Smith, [his attorney], and the agent and instructed them to avoid, to the extent possible without compromising the investigation, discussions with Planck regarding the merits or substance of the underlying indictment. … Since the beginning of the investigation, five monitored and recorded phone calls have occurred between Planck and Smith.

(*Id.* at 4).

On December 17, 2020, the Government's designated "filter attorney" filed a motion seeking (among other things) judicial review of the recordings to determine whether they were lawfully obtained, and whether, and to what extent, they can be used substantively by the Government –either in this prosecution or in a separate prosecution for obstruction of justice. (*Id.*) Planck objected to the legality of the recordings on the basis that the Government initiated contact with him without his counsel's presence. (DE 64). He further argued that the Government had no evidence that the crime of "obstructive conduct" had been committed prior to the contact, but only "hoped such … crime would happen during its surveillance." (*Id.* at 2). The Government replied, largely arguing that no Sixth Amendment violation occurred because Planck's *new* crime (*i.e.*, obstruction of justice) induced the covert investigation in the first place, and is separate from the charges in the indictment.

The Supreme Court in *Massiah v. United States*, 377 U.S. 201, 206 (1964), held that "it violates a criminal defendant's right to counsel when, at trial, the state uses 'evidence of the defendant's own incriminating words, which [federal] agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Ojile v. Smith*, 779 F. App'x 288, 295 (6th Cir. 2019) (citing *Massiah*, 377 U.S. at 206). In *Massiah* the defendant had been formally indicted, had retained counsel, pleaded not guilty, and had been released on bail; thus, his Sixth Amendment right to counsel was violated when statements were secretly elicited by narcotics agents and used against him at trial.

"[T]he primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). As such, *Massiah* prohibits admission of incriminating statements that were deliberately elicited from a defendant by a person acting as a government agent. *Massiah,* 377 U.S. at 206.

The Court observes that the constitutional right to counsel attaches only upon the initiation of adversary judicial proceedings, such as formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Gouveia*, 467 U.S. 180, 185 (1984). And that the right to counsel is offense specific. *See McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991). Thus, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Maine v. Moulton,* 474 U.S. 159, 180 n.16 (1985).

In *Maine v. Moulton,* 474 U.S. 159, 163–65 (1985), police intentionally sent a co-defendant-turned-informant to elicit information, both to discuss future plots but also "to discuss the charges for which [the other co-defendant] were already under indictment." *Moulton* was critically important for two reasons. For one, it reaffirmed the holding in *Massiah* that "the defendant's own incriminating statements, obtained by federal agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against him at his trial." *Moulton*, 474 U.S. at 179 (quoting *Massiah*, 377 U.S. at 207). Further, it held that, "incriminating statements pertaining to pending charges are inadmissible at the trial of *those* charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the … [Defendant's] Sixth Amendment [right was violated] by knowingly circumventing the accused's right to the assistance of counsel." *Id.* at 180 (emphasis added).

> [But t]hat *Massiah* … does not immunize the defendant from the consequences of utterances which themselves constitute criminal acts is recognized in several cases. *United States v. Osser*, 483 F.2d 727, 730-734 (3d Cir. 1973), *cert. denied*, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221; *United States v. Missler*, 414 F.2d 1293, 1302-1303 (4th Cir. 1969); *Vinyard v. United States*, 335 F.2d 176, 184-185 (8th Cir. 1964), *cert. denied*, 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed.2d 342. In all these cases evidence of post-indictment utterances which amounted to attempted bribery or obstruction of justice were held admissible to prove those crimes.

*United States v. Merritts,* 527 F.2d 713, 715-16 (7th Cir. 1975). Indeed, "[p]ost-indictment statements relating to new criminal acts … are generally outside the protection of *Massiah* because no person has a constitutional right to the assistance of counsel while committing a crime." *United States v. Moschiano*, 695 F.2d 236, 241-42 (7th Cir. 1982).

In this case, Planck first initiated contact with his co-defendant, Smith, not knowing that Smith had just begun cooperating with the United States. The Government then believed to have sufficient predication to open a *new*, separate criminal investigation into potential obstruction of justice. A new filter attorney and case agent were appointed, and thereafter commenced a series of (recorded) phone calls between Planck and Smith. (*See* DE 61-2). While Planck made statements without the knowledge of being recorded, and without his counsel's presence, the Government maintained that the investigation commenced with the focus of bringing new charges. Thus, the Court will find that no Sixth Amendment violation has occurred and that the United States' recordings were lawfully obtained.

Accordingly, the Court hereby ORDERS that the designated filter attorney in this case SHALL immediately submit the disputed recordings to the trial prosecutors for review.

Dated February 08, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY